**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CRAIG JOSEPH AUCOIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-110** |
| **TERREBONNE PARISH SHERIFF'S OFFICE, ET AL.** | **SECTION "I"(4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the record, the Court has determined that this matter can be disposed of in part without further evidentiary hearing.

## I.      Factual and Procedural Background

Plaintiff Craig Joseph Aucoin ("Aucoin") is a pretrial detainee housed in the Terrebonne Parish Criminal Justice Complex ("TPCJC") in Houma, Louisiana.[1] He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants Terrebonne Parish Sheriff's Office ("TPSO"), former Terrebonne Parish Sheriff Jerry Larpenter, Colonel Terry Daigre, Terrebonne Parish Sheriff Tim Soignet, Major Bergeron, TPCJC Warden Captain Rhonda Ledet, Lt. Schwausch, Terrebonne Parish Consolidated Government, Medical Director Richard "Petie" Neal, Dr. Richard Haydel, Lt. Theriot, Lt. Harris, and Officer Adam Billiot challenging the conditions of his confinement and the adequacy of his medical care.

In his complaint, Aucoin provides a sequential order of almost daily events at the TPCJC about which he complains caused him discomfort and/or violated his constitutional rights. As

---

[1] ECF No. 1, at 3.

background only, not something he urges as a claim here, Aucoin explains that, during a prior incarceration in 2017, he injured his back in the TPCJC.  He claims that because of overcrowding at that time, he had to sleep on the floor using a "boat," or plastic structure with a mattress on top. He claims that on July 22, 2017, while asleep, he rolled off of the boat, then under the bars of the second floor balcony, and fell about eight or ten feet onto a metal table and rolled off the table three feet to land face down on the floor.  He claims that he suffered injuries to his head, neck, back, shoulders, and left hip.

As additional background, he states that since the fall in 2017, he has been unable to walk on his own.  He used a wheelchair until his release on October 3, 2018.  After his release, he alleges that he used crutches and saw an orthopedic doctor, who prescribed physical therapy from January 2019 until January 2020.  By that time, Aucoin claims he was using only one crutch to assist his walking and was progressing towards using only a cane.  He indicates that the 2017 incident was the subject of a state court lawsuit in Terrebonne Parish, which was dismissed by summary judgment in January of 2020.  Aucoin claims that his appeal was filed in September of 2020 and was pending when this federal civil rights suit was filed.  Aucoin claims that he provided this information only as background for his current claims presented in this federal civil rights suit and he is not seeking relief for the 2017 incident.

Aucoin alleges for purposes of his current complaint that he was arrested again on February 8, 2020, and is housed in the TPCJC.  He claims that after his arrest, he was provided a wheelchair but his prescription pain medication, hydrocodone[2] and Mobic,[3] were taken away from him.  He

---

[2] Hydrocodone is a narcotic opiate medication used to treat extended and severe pain for patients who cannot be treated with other medications or treatments.  https://medlineplus.gov/druginfo/meds/a614045.html.

[3] Mobic is a brand name for meloxicam, a non-steroidal anti-inflammatory used to treat chronic arthritis by reducing pain, swelling, and stiffness of the joints.  https://www.webmd.com/drugs/2/drug-18173/mobic-oral/details.

was told that the jail does not allow hydrocodone medication.  He complains that he was not immediately provided with pain medication to replace it and was not immediately scheduled to see the prison doctor.

Aucoin alleges that he initially was placed in the medical dormitory, but he was not provided a bunk bed.  Instead, he was given a plastic "boat" frame with a thin mattress to use on the floor.  He claims that the thin mattress and having to get in and out of the boat caused him pain and discomfort.  On February 12, 2020, he sent a request to Medical Director Richard "Petie" Neal asking that he be given a bottom bunk bed, a blanket to cushion the seat of the wheelchair, and an extra or thicker mattress.  He received no response.  He claims, however, that on February 14, 2020, Captain Bourgeois (who is not a defendant) moved him out of the medical dormitory and into a bottom bunk made available when another inmate agreed to use the boat.

Aucoin further claims that he submitted a request for medical attention on February 11, 2020, requesting that he be seen by a doctor to get pain medication.  Despite this request, he was not examined by the prison physician, Dr. Richard "Dicky" Haydel, until February 18, 2020.  He claims that Dr. Haydel remembered his injury in 2017 which only required a steroid shot.  Aucoin claims that he told Dr. Haydel that he had two other MRI's while he was out of jail and his condition continued to get worse, possibly requiring surgery.  Aucoin further alleges that Dr. Haydel questioned why Aucoin's private orthopedic doctor had not given him steroid shots or done the surgery.  Aucoin told him that the doctor was waiting for payment and did not accept his Medicaid.  Dr. Haydel then told Aucoin he wanted to obtain and review the MRIs done by the orthopedist.  Aucoin also claims that Dr. Haydel committed medical malpractice when he refused to give Aucoin hydrocodone that had been prescribed by the orthopedic specialist.  Plaintiff refers to Dr. Haydel as a "puppet doctor" who just does what the prison medical director wants him to

do even if it is unethical and malpractice.  He also alleges that Dr. Haydel agreed to give him something for the pain but it took a few days to receive it.  Dr. Haydel also denied Aucoin's request for a walker based on prison restrictions.  He instead advised Aucoin to push the wheelchair like a walker if he wanted to walk around.  He was also told by the nurses that he could walk along the walls to assist him if he wanted.  Aucoin complains that the cells did not leave much room to walk and using the wheelchair as a walker could cause him injury.

After his visit with Dr. Haydel, Aucoin started receiving Robaxen[4] along with the Mobic for his alleged pain.  He noticed, however, that he was being charged for a third medication he was not receiving.  He wrote to Mr. Neal inquiring about it and the third medication started the next day.  Aucoin claims that he then noticed that the number of pills he was getting daily was inconsistent.  By February 25, 2020, he was only receiving two of the third kind of pills with the Robaxen and Mobic.  The nurse told him that he was being weaned off of that third medication through decreased doses.  By February 27, 2020, Aucoin received no medication other than the Robaxen and Mobic.  He believes that the third medication was a ruse to steal money from him. He also indicates that the medication did nothing to help the pain.

Aucoin further claims that, on February 28, 2020, he filed a first step grievance about the medical department and all of the foregoing complaints.  Mr. Neal responded that they would look for a more comfortable wheelchair for him.  He never got a new one and had to keep the same chair until August 6, 2020.  Chief Deputy Col. Daigre and Major Bergeron (the former Warden) answered steps two and three of the grievance appeals but did nothing to improve his situation.

---

[4] Robaxen is a muscle relaxer used to treat muscle spasms and pain.  https://www.webmd.com/drugs/2/drug-11197/robaxin-oral/details.

When Aucoin complained about other incidents after this, he did not always get an answer or would be told that he included too many complaints in one grievance form.

Aucoin claims that on March 4, 2020, he filed a medical request form because his medication was not helping his pain. He also did not want the Mobic anymore. On March 17, 2020, he was taken to University Hospital in New Orleans for an MRI. He complains that he was not given a facemask to wear, and this caused him great fear and discomfort about catching Corona virus. He claims he did not get a mask until the nurse arrived to check him in at the front door of the hospital. He alleges that he was put in a holding area with other offenders and left in the wheelchair with shackles and handcuffs. He claims that this caused him pain.

Aucoin also claims that, after more than two hours of complaining about the wait and his discomfort, he was told he was brought too early for his appointment. He states that he had to wait another 20 minutes to be called. Because he was there so long he missed lunch at the jail. He also claims that he should have been but was not given an extra tray at dinner to make up for it.

Aucoin claims that he filed a grievance complaint on March 19, 2020, because the failure to feed him was retaliation and cruel and unusual punishment. His grievance form was rejected by Lt. Schwausch for including too many topics. He claims he split the complaints into three and resubmitted them on March 23, 2020. He mailed his grievances directly to the sheriff explaining that Lt. Schwausch was blocking his ability to file grievances.

Aucoin also alleges that, in the meantime, on March 17, 2020, after he returned from his MRI, he was attacked by another inmate around 5:30 p.m. or 6:00 p.m. During the scuffle, which was caught on camera, the other inmate dislocated his shoulder and was taken to the hospital. Aucoin claims that no one at the jail including medical personnel checked on him. He claims that although he was not seriously injured, he was sore and in pain for about one week after the fight.

Around 11:00 p.m., Lt. Blanchard took Aucoin out of the dorm to ask him about the incident. Aucoin claims that Lt. Blanchard told him that he and the other inmate were being charged with simple battery. Aucoin complains that this shows he is being retaliated against because he was defending himself and the jail personnel just want to keep him in pain.

Aucoin claims that, on March 21, 2020, he stopped receiving Robaxen. He was told to fill out a medical request form to get a refill. He claims that he should not have had to request a continuation of the medication he had been taken for three years. He also claims that the prescription was only for thirty days so it should have ended sooner, proving he claims that the medical staff is providing inadequate care and just wants to charge him to see the doctor. This delay also caused him to be in pain over the weekend until he could be seen. After his request, he began receiving the Robaxen on March 23, 2020. He filed a grievance complaint about this but did not proceed past the first step because the medication restarted.

Aucoin alleges that, on March 24, 2020, he reviewed the MRI with Dr. Haydel. He claims that Dr. Haydel did not see much change from the 2017 MRI. Aucoin believes that Dr. Haydel did not get to look at the 2018 MRI done by the orthopedist before his arrest, because the nurse did got give Dr. Haydel the whole file. He was put back on Robaxen which did not help his pain.

Aucoin also claims that, on March 26, 2020, he filed a grievance complaint complaining that Lt. Schwausch always denied his grievances. He claims that Lt. Schwausch rejected the grievance and he did not receive answers to his second and third steps. When he complained about not receiving an answer, he was told that they were answered already. He eventually received the answers on March 31, 2020, but the copies were not complete. His requests for additional copies were denied per facility policy. When he complained about denial of that request, he did not receive answers.

Aucoin also claims that, on April 14, 2020, he wrote Sheriff Larpenter about everything that was going on in the TPCJC and sent copies of his grievances and responses. On April 24, 2020, the mail officer returned the letter to him because the grievances had not been properly filed with her before being sent to the Sheriff.

Aucoin alleges that, on April 15, 2020, he was in a verbal "altercation" with Deputy Adam Billiot. Aucoin indicates that Deputy Billiot handed him his medication which Aucoin was supposed to swallow in front of the deputy. Aucoin concedes, however, that he did not put his medication in his mouth. Instead, Aucoin walked away. Deputy Billiot banged on the window to get Aucoin to come back and take the pill in front of him. Aucoin alleges that he "gave him the middle finger" and yelled "f—k you" to Deputy Billiot before going to the sink in his cell where he claims he took a sip of water to swallow the pill. Deputy Billiot entered the dorm area and locked plaintiff's cell door. Plaintiff claims that Deputy Billiot then announced to the inmates that if the dorm gets "shook down," or searched, it would plaintiff's fault. Aucoin claims that this put plaintiff at risk of attack by other inmates. His grievances on this incident were denied and he did not receive an answer to the step three appeal.

Following this incident, Aucoin was taken to a disciplinary lockdown cell in the wheelchair by Deputy Billiot, Deputy Guidry, and Lt. Theriot. Once in the lockdown cell, they took the wheelchair telling Aucoin that medical said he did not need it. Aucoin began to yell and asked to see Lt. Theriot, who actually was already there and had been rolling him in the wheelchair. Lt. Theriot told Aucoin that he could not override medical and he had to take the chair. Deputy Billiot also replied that if Aucoin could fight, he could walk without the chair. Lt. Theriot said he would ask Mr. Neal if Aucoin could have it back. Aucoin claims that the officers also put another inmate, Pete Billiot, in the cell and that the inmate agreed to help Aucoin in return for a dorm of his choice

when he was off of lockdown.  Deputy Billiot later brought Aucoin the disciplinary violation report for the earlier incident.  Deputy Billiot also told Aucoin that Mr. Neal said that Aucoin did not need the wheelchair in the cell but would be allowed to use it when out of the cell.  Aucoin asked prison personnel for a copy of Lt. Theriot's body camera recoding, and he never heard back.

Aucoin claims that having to ask the other inmate for help was inconvenient.  Aucoin complains that when the inmate was asleep, he could not get to the toilet in the cell.  He claims that the medical unit took the wheelchair to cause him pain and suffering and violation the Americans with Disabilities Act ("ADA").  He claims medical director is against him, and the jail officials put him in lockdown because of how many grievances he filed and the prior legal action against them for the 2017 fall.[5]  He also claims that they gave him excessive time of 10 days in lockdown for cursing at Deputy Billiot.

Aucoin further claims that he pursued grievance complaints about being taken to lockdown, his excessive sentence, and having the wheelchair taken from him.  His grievances were unsuccessful, he claims, because of Lt. Schwausch, and he did not hear back from the third step appeal.  Aucoin continued his grievance proceedings by complaining about the lack of handrails in the cells and showers, not being taken for a shower or break on April 15, 2020.  He claims these grievances also were rejected, and he did not receive a step three response.

Aucoin also alleges that, on April 21, 2020, he spoke with a neurosurgeon by tele-med, and the doctor recommended Cymbalta[6] to go along with his other medication.  He was supposed to see this doctor again in three months, but he has not seen him since because of COVID-19.  On

---

[5] Aucoin also outlines what he claims to be other incidents with other inmates where medical personnel instigated disciplinary actions for no reason.

[6] Cymbalta is a brand name for Duloxetine, which is used to treat depression and anxiety and may be used to help relieve nerve pain in people with diabetes or ongoing pain due to medical conditions such as arthritis, chronic back pain, or fibromyalgia.  https://www.webmd.com/drugs/2/drug-91491/cymbalta-oral/details.

November 9, 2020, he filed a grievance complaint because the medical department did not schedule the return appointment.  As of the filing of his complaint, he has not seen the neurosurgeon again.  He was taken to the recommended physical therapy at Leonard Chabert Medical Center beginning June 26, 2020.

Aucoin claims that he continued to file multiple grievance complaints about each of the foregoing events and wrote to Sheriff Tim Soignet on July 1, 2020.  He has not received a favorable answer and often gets no response.  He also notes that prior to the new kiosk system for grievances, he had to submit his grievances on paper because he could not get upstairs to use the computer.

On July 7, 2020, he filed a request to be taken off of Robaxen and to be given Flexeril.[7] On July 9, 2020, he saw Dr. Scott Haydel at the prison, and the medication change was made.  He also was given a walker by Capt. Mitch Dupre on the recommendation of the physical therapist. He claims that it was cruel and unusual for him to have been denied a walker before that time since it could have been arranged.

Aucoin also claims that on July 19, 2020, he requested that the new warden, Captain Ledet, allow him to use paper grievances instead of the kiosk system.  Aucoin claims that he does not want to use the kiosk because it limits his appeals to 200 words and that is not enough for him.  He claims that his complaints to her and the Sheriff went unanswered.

Aucoin next claims that, on August 6, 2020, the medical staff took his wheelchair in contravention to the recommendations of his physical therapist that he do laps in the chair around the dorm on the walker and then use the wheelchair the rest of the time.  The medical staff did not

---

[7] Flexeril is used short-term to treat muscle spasms.  https://www.webmd.com/drugs/2/drug-11372/flexeril-oral/details.

think plaintiff was using the walker enough so they took the wheelchair after calling the physical therapist. He filed grievances about this too without success.

Aucoin also alleges that on August 23, 2020, the inmates were evacuated to another prison for Hurricanes Marco and Laura. He states that he was sent to Lasalle Correctional Center. Aucoin claims that, he was one of the last ones to return on August 30, 2020, at around 8:30 p.m. He claims that on his return, he noticed signs that his cell had been searched. He determined that seven bags of chips were missing from his locker. Also missing was a blank § 1983 complaint form he had hidden under his mattress. He complains that all of the inmates on his tier were placed on lockdown that night because some inmates had acted up at Catahoula Correctional Center. He filed grievances about all of this too. After receiving responses denying his grievances, he wrote the Warden to ask to see video of who searched his room and to see if other inmates took his things. He wrote the Warden that he believed the search was retaliation by Lt. Schwausch because of all of the grievances he files. Aucoin claims that over the next few months, he continued to inquire about the status of the charges of these inmates. He was told the matter was turned over to the facility investigator. He eventually received an answer on December 21, 2020, when he received a message from Sgt. Blackwell that he was applying for arrest warrants related to the items stolen from his cell in September. The next day, one of the inmates was taken off of the tier and a warrant was issued for the one who had been released.

Aucoin claims that, in the meantime, on September 3, 2020, he fell walking back to his cell. He claims that he had physical therapy that morning for the first time in two weeks, because of the hurricanes. He claims that he fell because they took his wheelchair away in August. He immediately began having tingling feelings in his arms, hands, and face, and pain in his knee. He

was checked by the guards and medical personnel. He was brought to the medical unit by wheelchair. They checked his blood pressure and then left him sitting in pain.

After about an hour, Ms. Monique told Lt. Harris to take Aucoin back to his cell. Aucoin complains that he was not taken to a hospital. Later during pill call, Aucoin claims that he noticed his knee began to swell. When the medical staff person brought him his pills, he asked him for help to get to the toilet. He looked at plaintiff's leg and did not see swelling. He gave plaintiff Tylenol and left.

Plaintiff did not go to the toilet and about ten minutes later, he peed on himself. When he asked for a mop to clean up, Lt. Harris told Deputy Lawson to tell Aucoin to use toilet paper. He believes this was retaliation by Lt. Harris because of his other lawsuits. He filed grievances and wrote letters about this incident. He also asked for and was denied a video of his fall unless he had a subpoena.

Aucoin claims that, on September 10, 2020, he was taken to physical therapy for the first time after his fall. He alleges that the therapist said he needed to be seen by a doctor for the tingling in his arms, hands, and face. Aucoin did not see a doctor before he returned to physical therapy on September 21, 2020. Aucoin was examined by Dr. Matthew Watkins at the jail on September 24, 2020. Dr. Watkins cleared Aucoin's return to physical therapy and told him that the tingling was not from the fall. Aucoin states that Dr. Watkins ordered blood work and gave him an anti-inflammatory. The blood work was done and he was checked for blood sugar levels; but he still has the tingling. His requests to see a specialist have been denied.

Aucoin further claims that, on October 15, 2020, he asked Mr. Neal for rubber resistance bands to do his physical therapy exercises. On December 9, 2020, he was advised by the medical director that he could not have the bands because of liability but he would be on the list "to go up

front" daily to use the bands.  He did not get called to go to the front until December 11, 2020, and then he was not called again until December 14, 2020.  He was able to use the equipment every day that week.  Aucoin complains that he should have been allowed to have the bands so he could exercise at his own pace in his medical dorm.

Aucoin alleges that he was not taken timely to his last therapy appointment on November 30, 2020, and had to wait until December 3, 2020, to go back.  That same day, he claims that he made a made a commissary order and was shorted two squeeze cheeses and a stamped envelope. Aucoin claims that he complained to Sgt. Donna Bourg, and she told him that the items were given to him.  He filed an unsuccessful grievance and wants a video of this exchange.

Aucoin also claims that, on December 29, 2020, he may have contracted COVID-19 from another inmate while doing physical therapy with him.  After a week of symptoms, he was never tested but was treated for his aches and fever.  Soon after, on January 4, 2021, another inmate on his tier tested positive and the inmate was moved.  The medical staff tested all of the inmates in the dorm.  Aucoin claims he reported to them that he had already had symptoms the week before. He alleges that, on January 7, 2021, the test results were returned and all of the inmates were moved off of the tier except for five inmates, including Aucoin, who tested positive.  Aucoin claims that it was intentional indifference to him when he was not tested sooner when he had symptoms.

Aucoin seeks injunctive relief in the form of mandatory training, termination, or demotion of the defendants, changes to medication and housing policies, transfer to a Department of Corrections facility when he is convicted, and an injunction to prevent retaliation for filing suit He also seeks compensatory and other monetary damages, as well as copies of all of his grievance complaints submitted to the prison.

## II.      Standards for a Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.      Discussion

### A.      TPSO is not a Proper Defendant

Aucoin has named the TPSO as a defendant.  The TPSO is not a person for purposes of suit under § 1983.  His claims against the TPSO are frivolous and must be dismissed.

Section 1983 imposes liability on a "person" who violates the plaintiff's constitutional rights while acting under color of state law.  42 U.S.C. § 1983; *see Will v. Mich. Dep't of St. Police*, 491 U.S. 58 (1989).  A person's or entity's capacity to sue or be sued is a requirement under Fed. R. Civ. P. 17(b).  An entity's capacity to be sued is determined by reference to the law of the state in which the district court sits.  *Id*.  The State of Louisiana grants no such legal status to any law enforcement office or department.  *Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So. 2d 236 (La. App. 3d Cir.), *writ refused*, 352 So. 2d 235 (La. 1977).  For this reason, "a parish sheriff's office is not a legal entity capable of being sued in a federal civil rights action."  *Francis v. Terrebonne Parish Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at *2 (E.D. La. Dec. 9, 2009) (citing *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 283 (5th Cir. 2002)); *see also Williamson v. Louisiana*, No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); *Fitch v. Terrebonne Parish Sheriff Dep't*, No. 06-3307, 2006 WL 2690077, at *2 (E.D. La. Sept. 18, 2006).

Because the Terrebonne Parish Sheriff's Office is not a juridical or suable entity to be held liable under § 1983, the claim against it, if any, is frivolous and otherwise fails to state a claim for which relief can be granted and should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

**B.**     **Terrebonne Parish Consolidated Government**

Aucoin also sued the Terrebonne Parish Consolidated Government as employer of the medical staff at TPCJC.  However, in Louisiana, the parish government has *no* authority over the general management of the jail or its medical care provider.  *Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. 1998).  Under Louisiana law, the parish government is responsible for the financing and physical maintenance of the parish jail building and for appointing or

contracting with a health care provider to tend to the medical needs of the inmates.  *See* La. Rev. Stat. Ann. § 15:304; La. Rev. Stat. Ann. § 15:702, § 15:703; La. Rev. Stat. Ann. § 33:4715.  With regard to the medical care provider, the parish government's "sole responsibility shall be . . . its contractual obligations with [the] health care provider," and *not* how the medical care is administered.  La. Rev. Stat. Ann. § 15:703(D); *accord Belcher v. Lopinto*, No. 18-7368, 2020 WL 5891583, at *5 (E.D. La. Oct. 5, 2020) (Under Louisiana law, a parish government is not policy maker for the prison and has no duty to monitor or verify the performance of medical services it contracted with for the jail).  The parish sheriff, not the parish government, is responsible for the day-to-day administration and operation of the jail and responsible for the welfare of the inmates. *See* La. Rev. Stat. Ann. § 13:5539(C) (formerly La. Rev. Stat. Ann. § 33:1435(A)); La. Rev. Stat. Ann. § 15:704; *see*, *e.g.*, *Fairley v. Stalder*, 294 F. App'x 805, 812 (5th Cir. 2008)(distinguishing the division of duties and responsibilities for local jails between sheriff and local governing body, specifically addressing Orleans Parish Prison and the City of New Orleans); *Broussard v. Foti*, No. 00-2318, 2001 WL 258055 (E.D. La. Mar.14, 2001) (same).

Thus, for purposes of § 1983, "[s]imply put, local governments can never be liable under Section 1983 for the acts of those whom the local government has no authority to control." *Cousin v. St. Tammany Parish Jail*, No. 14-1514, 2015 WL 5017113, at *3 (E.D. La. Aug. 19, 2015) (citing *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996), *cert. denied*, 520 U.S. 781 (1997)).  For these reasons, Aucoin has no legal basis to assert a claim against the Terrebonne Parish Consolidated Government for any action or inaction taken by the medical staff or other personnel at the TPCJC.  His claim against the Terrebonne Parish Consolidated Government  is frivolous and otherwise fails to state a claim for which relief can be granted under § 1983 and should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e.

C.    <u>**Claims Against Remaining Defendants**</u>

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment's prohibition on "cruel and unusual punishments" applies to both convicted and pretrial inmates through the Fourteenth Amendment's Due Process Clause and forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted); *Farmer*, 511 U.S. at 832 & 837.

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In other words, the prison official must have a sufficiently culpable state of mind, one of "deliberate indifference" to inmate health or safety. *Id*. at 834. To find that an official is deliberately indifferent, it must be proven that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

The constitutional rights of a pretrial detainee encompass both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). Thus, "the substantive limits on state action set by the Due Process Clause provide that the state cannot punish a pretrial detainee." *Reed v. Wichita Cnty. (Estate of Henson)*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Pretrial detainees may bring these constitutional challenges as an attack on a

"condition of confinement"[8] or as an "episodic act or omission." *Shepherd v. Dallas Cnty.*, 591

F.3d 445, 452 (5th Cir. 2009); *see also Reed*, 795 F.3d at 464 ("[T]here is no rule barring a plaintiff

from pleading both alternative theories[.]").  A majority of Aucoin's claims relate to isolated or

episodic events.  To the extent he may incorporate general complaints about general conditions he

believes to be inadequate, the claims have been considered here under the appropriate standards.

### a.    <u>Adequate Medical Care</u>

Deliberate indifference by medical staff to an inmate's serious medical needs constitutes

the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment.  *Estelle*, 429

U.S. at 104-05.  As applied to pretrial detainees, like plaintiff, "[t]he Fourteenth Amendment

requires that state officials not disregard the 'basic human needs' of pretrial detainees, including

medical care." *Reed v. Krajca (Estate of Henson)*, 440 F. App'x 341, 343 (5th Cir. 2011).  "A

serious medical need is one for which treatment has been recommended or for which the need is

so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d

339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).  A prison

official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to

an inmate and disregards that substantial risk.  *Farmer*, 511 U.S. at 847; *see also Parrish v.*

*Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires

actual knowledge and disregard of a substantial risk of serious injury); *Washington v. LaPorte*

*Cnty. Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).  Deliberate indifference is manifested

in the providers intentional denial of medical care or intentionally interfering with the treatment

once prescribed.  *Farmer*, 511 U.S. at 847.  To state a cognizable claim, a prisoner must allege

---

[8] An inmates "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Reed*, 795 F.3d at 463 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir. 1996)).

acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.

In this case, Aucoin has alleged a number of distinct incidents which he claims show that he did not receive adequate medical care. However, he has not demonstrated an intentional indifference to his serious medical needs. Instead, Aucoin's almost daily diary accounts, show that he was examined and treated by Dr. Haydel and other medical providers on a regular and on-going basis for his complaints of pain.

Reviewing his allegations, he complains that after his arrest in February of 2020, he was given a wheelchair instead of a walker because of prison policy. He concedes that he was eventually provided with a walker on July 9, 2020, when a new administrative regime took over through the Sheriff's Office. More importantly, once the walker was recommended by his physical therapist, it was approved by the prison staff for his use. Aucoin also complains that he was denied narcotic medication based on prison policy rather than following his pre-arrest prescription. He acknowledges that he was prescribed other medication to replace it, it just was not the medication of his choice. Aucoin also complains of several brief delays in his ability to see a doctor, attend physical therapy, or receive medication that had to be renewed. He also complains that, while he suffered no serious injury, he did not request to be and was not automatically examined after his fight with another inmate on March 17, 2020. He also complains that he has not been cured of the tingling following his alleged fall on September 3, 2020. He contends that he was not allowed to have his own rubber straps to use for physical therapy in his cell, and instead had to use the straps provided in a supervised area. Finally, he includes claims that he was not tested when he first exhibited symptoms akin to COVID-19, although he was provided with medical care for the symptoms.

None of Aucoin's complaints rise to the level of inadequate medical care for purposes of stating a non-frivolous § 1983 claim. The fact that Aucoin did not see medical personnel at every immediate demand does not amount to a constitutional violation. Instead, it is well settled that delay alone in receiving medical treatment or medication is not sufficient to state a claim under § 1983. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). Regardless of the length of the delay, to state a claim, the plaintiff must allege deliberate indifference to a serious medical need that resulted in *substantial* harm. *Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 422 (5th Cir. 2017); *Easter*, 467 F.3d at 463. To do so, a plaintiff must establish deliberate indifference by showing that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Alderson*, 848 F.3d at 422. The pain suffered during a delay in treatment or an increase in the risk of infection can constitute a substantial harm and form the basis for an award of damages. *Id*. at 422-23. However, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza*, 989 F.2d at 195.

Here, Aucoin has not alleged this kind of unconstitutional indifference to any of his medical needs or that any delay resulted in substantial harm to him. He instead concedes that, while he is not pain free, he was always provided with the medical prescribed by the prison doctors, was regularly examined, sent for testing, and provided with physical therapy. The constitution does not require the medical care he received to have healed his injuries or left him free from all pain and discomfort. Where, as here, an inmate has received regular medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because

pain persisted despite the treatment. *Gobert*, 463 F.3d at 346; *Williams v. Chief of Medical Operations, Tarrant County Jail*, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); *Kron v. Tanner*, No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), *report and recommendation adopted by* 2010 WL 3171040 (E.D. La. Aug. 6, 2010).

Aucoin also refers to much of his care as "malpractice" by Dr. Haydel and other unidentified medical personnel whom he claims follow prison policy rather than make independent medical decisions to provide him treatment he thinks he needs for his own comfort. Aucoin's disagreement with the medical assessment and treatment he has received does not present a basis for liability under the Constitution. *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 653 (2019); *Gobert*, 463 F.3d at 346. Medical personnel's determination about whether a certain form of treatment, including wheelchair versus walker, whether a certain medication is indicated, or whether to provide treatment at all are "classic example[s] of a matter for medical judgment" that does not constitute deliberate indifference. *Estelle*, 429 U.S. at 107. Despite his discontent, Aucoin's allegations establish, that each time he requested care, he received medical attention designed to ease his subjective discomfort and pain. Even if the treatment he received may have been different from other providers, allegations of negligence or even malpractice are insufficient to establish deliberate indifference and do not state a constitutional violation. *See id*. at 106; *Gibson*, 920 F.3d at 219-20.

With regard to his complaint that he was not tested or isolated in connection with his alleged COVID-19 symptoms, he has not demonstrated a deliberate indifference. First, it is significant to note that he concedes that he was treated by medical personnel for his alleged symptoms he believes in hindsight may have been COVID-19. Nevertheless, during the COVID-19 pandemic, "[a] detention facility's protocols for isolating individuals, controlling the movement

of its staff and detainees, and providing medical care are part and parcel of the conditions in which the facility maintains custody over detainees." *Sacal-Micha v. Longoria*, 449 F. Supp. 3d 656, 663 (S.D. Tex. 2020). In addition, the courts have *not* determined that "the incidence of diseases or infections, standing alone, imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks." *Shepherd*, 591 F.3d at 454. "Rather, a detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights." *Id*. This requires a showing that either "serious injury and death [a]re the inevitable results of the [institution's] gross inattention to the needs of inmates with chronic illness," *Id*., or that a specific rule or policy "caused ... extreme suffering or resulted in adverse medical outcomes serious enough to establish a constitutional violation." *Cadena v. El Paso County*, 946 F.3d 717, 728 (5th Cir. 2020).

Aucoin has not alleged this level of threat to his health or that of the inmate population. Instead, he indicates that as the incidents of positive cases developed, the TPCJC and medical personnel took measures as necessary to test, treat, and/or isolate inmates in the potentially exposed areas. Aucoin, therefore, does not present allegations to show that the prison medical staff, Dr. Haydel, or the prison administration were unconstitutionally indifferent to a risk of danger attributable to COVID-19.

Aucoin also has not alleged that the officials were indifferent to any serious medical need in the treatment of his pain and discomfort or that any delay has caused him substantial harm. Aucoin's claims of medical indifference, specifically against Dr. Haydel, are frivolous and otherwise fail to state a claim for which relief can be granted. The claims should be dismissed pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

b.    **Temporary Sleeping Accommodations**

Aucoin claims that while housed in the medical dormitory, he was assigned to sleep on a "boat" with an uncomfortable mattress from February 8 through 14, 2020, rather than a traditional bunk.  He describes the boat as a plastic frame that holds a mattress.  This he claims made him uncomfortable because of his prior back issues.  While his alleged temporary discomfort was unfortunate, the Constitution does not require that an inmate be provided with an elevated bed. *See Gaines v. McDonald*, 577 F. App'x 335 (5th Cir. 2014) ("There is no authority holding that a prisoner has a constitutional right to sleep in an elevated bed."); *Mann v. Smith*, 796 F.2d 79, 85-86 (5th Cir. 1986) (pretrial detainees have no right to an elevated bed); *Walcott v. Terrebonne Par. Consol. Gov't*, 2017 WL 6374640, at *6 (E.D. La. Sept. 22, 2017), *report and recommendation adopted by* 2017 WL 6344148, at *1 (E.D. La. Dec. 12, 2017) (inmate's complaint that he slept on a boat with a mattress was frivolous); *Farrow v. Cabana*, No. 08cv1436, 2010 WL 1233410, at *3 (S.D. Miss. Mar. 25, 2010) (inmates temporary stay on a plastic boat with bedding was not more than a temporary inconvenience or discomfort and did not amount to a constitutional violation); *accord Harper*, 174 F.3d at 719 ("The Constitution does not require that prisoners be provided a comfortable jail.").  Aucoin's claims related to the boat bed are frivolous.

The fact that Aucoin says he had discomfort getting in and out of the boat bed during these few days does not change this result.  At the time, no medical professional had determined a need for a bunk bed accommodation.  *See Walcott*, 2017 WL 6374640, at *6 n.9.  The moment officials determined that Aucoin could be moved to a bunk bed, he was.  Any delay or temporary inconvenience did not demonstrate an intentional indifference.

### c.    One Missed Meal

Aucoin also alleges that on March 17, 2020, he missed one meal while he was at the hospital for his MRI.  The Constitution requires that inmates be provided well-balanced meals with sufficient nutritional value to preserve health.  *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)).  However, the deprivation of food does not violate the constitution unless "it denies a prisoner the minimal civilized measures of life's necessities."  *Berry*, 192 F.3d at 707 (quotation and citation omitted).  It is well settled that an inmate's constitutional rights are *not* violated if he misses one or even an occasional meal.  *Coleman v. Platt*, 558 F. App'x 493, 494 (5th Cir. Mar. 21, 2014) (plaintiff's claim that he missed only one meal did not rise to the level of a cognizable constitutional injury) (citing *Berry*, 192 F.3d at 507, and *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999)); *Talib*, 138 F.3d at 214 n.3 ("Missing a mere one of out every nine meals is hardly more than missed by many working citizens over the same period").  Even on a regular, permanent basis, having only two rather than three meals a day may be constitutionally adequate.  *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986).  Aucoin's claim that he missed a meal is frivolous and fails to state a claim for which relief can be granted.

### d.    Grievance Process

Aucoin contends that he is displeased with Lt. Schwausch's (and other defendants') persistent denial or rejection of his numerous grievance complaints and with the lack of success and missed responses in connection with his grievance complaints, appeals, and even letters sent to other officials when he attempted to circumvent the strictures of the grievance process. Similarly, Aucoin expresses his dissatisfaction with prison officials' response to his complaints and grievance inquiries about his potato chips stolen during a hurricane evacuation, an incident

that eventually resulted in the arrest of two inmates.  His claims are frivolous for the following reasons.

An inmate has no constitutional right to an adequate and effective grievance procedure. *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)).  The Constitution also does not create a federally protected liberty interest for prisoners to have their grievances investigated or resolved to their satisfaction.  *See Minix v. Stoker*, 289 F. App'x 15, 17 (5th Cir. 2008); *Geiger*, 404 F.3d at 373-74.  Any alleged due process violation arising from an "alleged failure to investigate [prisoner] grievances is indisputably meritless."  *Geiger*, 404 F.3d at 374; *see also Taylor v. Cockrell*, 92 F. App'x 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated [the prisoner's] constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim.").  Even Aucoin's concerns about having to use a kiosk rather than paper and the process he is required to follow fail to invoke constitutional scrutiny necessary under § 1983.  *See Spencer v. Jackson*, No. 17CV43, 2018 WL 4577408, at *1 (E.D. Tex. Aug. 21, 2018).

In addition, the record reflects that prison officials investigated and addressed the theft of his potato chips by two other inmates, as well as his other grievances, although his requested relief was denied.  To the extent Aucoin claims he was entitled to more investigation and response, he has no protected due process rights in the handling of his grievances.  *See Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012) (rejecting claim that prison official's failure to conduct an adequate investigation into his grievance implicated due process concerns "because [appellant] lacks a protected interest in a favorable resolution to his grievances").  He also has no claim against prison officials merely because that official denied his grievance complaints.  *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013).  Aucoin simply has no "federally protected liberty interest in

having these grievances resolved to his satisfaction." *Geiger*, 404 F.3d at 374; *see Avon v. Green*, No. 14-CV-109, 2014 WL 1917543, at *2 (N.D. Tex. May 12, 2014) ("Denying plaintiff's grievances, or failing to resolve them in the manner preferred by plaintiff, is not a violation of plaintiff's constitutional rights.").

Aucoin's claims related to the grievance procedure and the denial or unsatisfactory resolution of his grievance complaints are frivolous and otherwise fail to state a claim for which relief can be granted.

### e.    Disciplinary Violations

Aucoin complains that he should not have been charged with a disciplinary violation after his fight with another inmate on March 17, 2020, because he was defending himself.  He also contends that he received an excessive sentence of 10 days after his disciplinary violation for using a vulgar hand gesture and cursing at Deputy Billiot.  However, he fails to present a non-frivolous claim under § 1983.

Aucoin's discipline and placement in a disciplinary cell after he was charged with rule infractions, even if he disagreed with the charges, did not implicate a constitutionally protected liberty interest.  *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (". . . administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest.").  Furthermore, "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will *never* be a ground for a constitutional claim" because it "simply does not constitute a deprivation of a constitutionally cognizable liberty interest."  (emphasis added) *Pichardo v. Kinker*, 73 F.3d 612, 612-613 (5th Cir. 1996).  Even in the pre-trial detainee context, the Fifth Circuit accords "the widest possible deference" to prison officials in classifying inmates as necessary "'to maintain security and preserve internal order.'"

*Perez v. Anderson*, 350 F. App'x 959, 962 (5th Cir. 2009) (quoting *Hernandez v. Velasquez*, 522 F.3d 566, 561 (5th Cir. 2008)).

It is clear that "the Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). Instead, although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). Thus, the Supreme Court has held that due process does not require that a prisoner be afforded the full panoply of procedural protections in disciplinary proceedings when the disciplinary sentence or other restrictions do not inevitably effect the duration of his incarceration or sentence. *Id.*, at 481-83 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Hewitt v. Helms*, 459 U.S. 460 (1983)). A prisoner's temporary placement in a restricted cell or loss of other privileges as punishment for disciplinary violations are "merely changes in the conditions of his confinement and do not implicate due process concerns." *Madison*, 104 F.3d at 768; accord *Hernandez*, 522 F.3d at 563; *Dixon v. Hastings*, 117 F. App'x 371, 372 (5th Cir. 2005); *Milch v. Thayer*, 211 F.3d 953, 957-58 (5th Cir. 2000). These restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest that would require due process protections.[9] *Hernandez*, 522 F.3d at 563; *Madison*, 104 F.3d at 768.

---

[9] Examples of prison hardships that would qualify as atypical and significant include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital, and extension of the prisoner's sentence for his underlying criminal conviction. *Sandin*, 515 U.S. at 484; *see Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (addressing solitary confinement in a "Supermax" facility imposed an atypical and significant hardship to a protected liberty interest based on the existence of extenuating circumstances, including disqualification of an otherwise eligible inmate from parole consideration).

In the instant case, Aucoin alleges that he was placed in disciplinary confinement after fighting with another inmate and after disrespectful and defiant behavior towards an officer. He complains that he believed the charge for the fight to be inappropriate because he was only defending himself from the other inmate and that he felt his sentence in a disciplinary cell was too long for the other rule infraction. The result of these disciplinary actions amounted to nothing more than a change in Aucoin's location in the jail and his claim therefore is frivolous.

The Constitution requires no particular process, nor is review under § 1983 available, unless something more than a mere change in condition of confinement occurs. *Sandin*, 515 U.S. at 484; *Madison*, 104 F.3d at 768. Aucoin has not alleged any "atypical, significant deprivation" that might rise to the level of constitutional concerns to warrant review of his disciplinary proceedings. *See Lander v. Lamartiniere*, 515 F. App'x 257, 259 (5th Cir. 2013) (loss of canteen privileges and transfers to different cellblocks did not implicate liberty interest that required due process); *Johnson v. Livingston*, 360 F. App'x 531, 532 (5th Cir. 2010) (citing *Milch*, 211 F.3d at 958) ("Loss of privileges and cell restriction do not implicate due process concerns."); *Hernandez*, 522 F.3d at 563 (distinguishing the "extreme conditions" described in *Wilkinson* and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); *Payne v. Dretke*, 80 F. App'x 314, 2003 WL 22367564, at *1 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

Because Aucoin does not allege that the disciplinary proceedings resulted in the imposition of any "atypical and significant hardship on the inmate in relation to the ordinary incidents of

prison life," his claim is frivolous and otherwise fails to state a claim for which relief can be granted.

### f.    Incomplete Commissary Order

Aucoin also complains that he once was shorted two squeeze cheeses and a stamped envelope from his commissary order on December 3, 2020. He claims he inquired about it, and Sergeant Bourg, who is in charge of the commissary, told him that the commissary officer remembered giving him the items. His grievance complaint was denied at each step on the finding that the commissary officer was more credible. His claims is frivolous and not cognizable under § 1983.

The United States Supreme Court has long held that when a state actor deprives a person of his property, whether the act was unauthorized or intentional, there is no due process violation if state law provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517 (1984) (intentional deprivations); *Parratt v. Taylor*, 451 U.S. 527 (1981) (unauthorized deprivations). Similarly, when a deprivation is caused by an act of negligence, due process and the Constitution simply are not implicated. *Daniels v.. Williams*, 474 U.S. 327, 330–31 (1986) (negligence does not implicate due process for purposes of § 1983). It is well settled in this circuit that Louisiana law clearly provides an inmate with an adequate post-deprivation remedy through its expansive tort laws. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984); *Bennett v. La. Dep't of Pub. Safety and Corr's*, 61 F. App'x 919, 2003 WL 1109690, at *1 (5th Cir. 2003); *Arnold v. Inmate Accounts*, 48 F. App'x 105, 2002 WL 31017153, at *1 (5th Cir. 2002).

Thus, it is of no consequence whether Aucoin was deprived of his goods, or the funds to pay for them, through negligence or an intentional act of the commissary personnel, because "in neither instance does he state a valid § 1983 action for deprivation of property." *Geiger*, 404 F.3d

at 374; *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (". . . when an inmate's property is taken without compensation, his remedy is in state court, not federal court."). His claim is frivolous and otherwise fails to state a claim for which relief can be granted.

## IV.    <u>Recommendation</u>

It is therefore **RECOMMENDED** that Aucoin's § 1983 claims against defendants Terrebonne Parish Sheriff's Office and the Terrebonne Parish Consolidated Government be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Aucoin's § 1983 claims of medical indifference against Dr. Richard Haydel be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Aucoin's § 1983 claims arising from his temporary sleeping accommodations from February 8-14, 2020, one missed meal on March 17, 2020, ineffective and inconvenient grievance process, challenges to the March 17, 2020 disciplinary violations and 10-day sentence for cursing at Deputy Billiot, and the incomplete commissary order on December 3, 2020, against defendants, Sheriff Larpenter, Colonel Daigre, Sheriff Soignet, Major Bergeron, Warden Ledet, Lt. Schwausch, Mr. Neal, Lt. Theriot, Lt. Harris, and Deputy Billiot, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Aucoin's remaining § 1983 claims of retaliation for using the grievance procedure, denial of access to a wheelchair, shower, recreation time, and

assistance to a toilet while in the disciplinary cell beginning March 17, 2020, and denial of access to his wheelchair which caused his fall on September 3, 2020, and denial of assistance to the toilet after his fall on September 3, 2020, against remaining defendants, Sheriff Larpenter, Colonel Daigre, Sheriff Soignet, Major Bergeron, Warden Ledet, Lt. Schwausch, Mr. Neal, Lt. Theriot, Lt. Harris, and Deputy Billiot, remain referred to the undersigned Chief Magistrate Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[10]

New Orleans, Louisiana, this ____27th____ day of April, 2021.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[10]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.